UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEMARIO HUDSON,                      )        Case No. 1:13CV816
                                     )
            Petitioner,              )        JUDGE CHRISTOPHER A. BOYKO
                                     )        Magistrate Judge George J. Limbert
      v.                             )
                                     )
TERRY TIBBALS, Warden,               )
MANSFIELD CORRECTIONAL               )        **REPORT AND RECOMMENDATION**
INSTITUTION,                         )        **OF MAGISTRATE JUDGE**
                                     )
            Respondent.              )
                                     )

       Pro se Petitioner DeMario Hudson ("Petitioner") has filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional

violations that occurred in conjunction with his Cuyahoga County, Ohio Court of Common Pleas

convictions for three counts of aggravated robbery with firearm specifications in one case, three

counts of aggravated robbery with firearm specifications in a second case, and two counts of

aggravated burglary with firearm specifications in a third case.  *Id*.  On November 26, 2013,

Respondent Terry Tibbals, Warden of the Mansfield Correctional Institution in Mansfield, Ohio

("Respondent") filed a return of writ.  ECF Dkt. #7.  On February 19, 2014, Petitioner pro se filed

a traverse.  ECF Dkt. #9.

       For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the

petition in its entirety with prejudice:

## I.    SYNOPSIS OF THE FACTS

       The Eighth District Court of Appeals of Ohio set forth the relevant facts on direct appeal.

ECF Dkt. #7-1 at 119-121. These binding factual findings "shall be presumed to be correct," and

Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert.

denied*, 119 S.Ct. 2403 (1999):

Demario and his brother, Marlon Hudson, were jointly indicted in three separate cases, which were consolidated at the trial court level. [1] The charges resulted from three incidents that occurred in January 2010, where the defendants broke into houses.

[1] A third defendant, Montana Hudson, was also indicted.

In the first incident, a 26-year-old single mother was present. Montana "guarded" the door, while Demario and Marlin rummaged through her house. Marlon had a sawed-off shotgun and Demario had a revolver. At some point during the crime, the victim's three-year-old daughter woke up and started crying when she saw the defendants. The defendants told the mother to get her under control. The defendants stole a number of the woman's personal effects.

The second incident occurred the following day. The victim, a college student home for winter break, was getting out of her car at her home when Marlon approached her with a sawed-off shotgun; Demario approached with a pistol. The defendants entered her home. The victim's father was present and the defendants forced him onto the ground. The victim's 17-year-old sister was also present; she remained hiding in a bedroom.

Marlon forced the victim into another bedroom and demanded money. When the victim responded that she did not have any, Marlon said he did not believe her and made her disrobe. The defendants stole numerous personal effects from the home.

The third incident occurred approximately one week later. Two females and one male were together in a car. One of the females was being dropped off. As the car was stopped so that the one passenger could get out, Demario, Marlon, and Montana ran up to the car and tried to force the male out. The defendants had weapons. The man ran away and the two women ran into their house. The defendants caught up with the man and forced him to the ground. The victim had a "doo-rag" on his head, which the defendants pulled down over his face. They then stripped him down to his underwear and socks. The defendants forced the victim into their vehicle, drove him to another location, and dropped him off in his underwear and socks.

One person involved in each of the incidents was able to see that the defendants were in a dark-colored Plymouth Breeze. Demario and Marlon are brothers and their mother was the owner of a black Plymouth Breeze. Some of the victims also saw that the defendants were wearing rubber gloves.

After the defendants were apprehended, several of the items the victims reported missing were found inside the Plymouth Breeze along with the same kind of rubber gloves the defendants used during the commission of the crimes. Other items reported missing by the victims were recovered during the execution of search warrants at the defendants' homes. More rubber gloves like the ones used during the commission of the crimes were found in Marlon's living quarters.

Marlon and Demario pleaded guilty to eight first-degree felonies and three three-year firearm specifications. They were each sentenced to a 31-year prison term.

ECF Dkt. #7-1 at 119-121.

-2-

II.    **PROCEDURAL HISTORY**

    A.    **State Trial Court**

In its January 2010 term, the Cuyahoga County Grand Jury indicted Petitioner and his brothers, Marlon Hudson, and Montana Hudson, on three counts of aggravated robbery in violation of ORC § 2911.01(A)(1) with one and three-year firearm specifications, three counts of kidnapping in violation of ORC § 2905.01(A)(2) and (B)(2) with one and three-year firearm specifications, theft in violation of ORC § 2913.02(A)(1), arson in violation of ORC § 2909.0.(A)(1) and possessing criminal tools in violation of ORC § 2923.24(A). ECF Dkt. #7-1 at 1-7. Marlon Hudson was also indicted for having weapons while under disability. *Id*. at 6. This was designated as Case Number 533087 ("Case 533087").

In a separate indictment, the May 2010 Cuyahoga County Grand Jury also indicted Petitioner, Marlon Hudson and Montana Hudson on three counts of aggravated robbery in violation of ORC § 2911.01(A)(1) with one and three-year firearm specifications, three counts of aggravated burglary in violation of ORC § 2911.11(A)(2) with one and three-year firearm specifications, four counts of kidnapping in violation of ORC 2905.01(B)(1) and (B)(2), with one and three-year firearm specifications, and two counts of gross sexual imposition in violation of ORC § 2907.05(A)(1). ECF Dkt. #7-1 at 8-18. This was designated Case Number 537809 ("Case 537809").

In yet another indictment, the May 2010 Term of the Cuyahoga County Grand Jury indicted Petitioner, Marlon Hudson and Montana Hudson on two counts of aggravated burglary in violation of ORC § 2911.11(A)(2) with one and three-year firearm specifications, two counts of aggravated robbery in vioation of ORC § 2911.01(A)(1) with one and three-year firearm specifications, three counts of kidnapping in violation of ORC § 2905.01(B)(1) and (B)(2), with one and three-year firearm specifications, and two counts of gross sexual imposition in violation of ORC § 2907.04(A)(1). *Id*. at 19-26. This was designated Case Number 537810 ("Case 537810.") .

On September 14, 2010, the Cuyahoga County Prosecutor filed a motion to consolidate the indictments for trial. ECF Dkt. #7-1 at 27. Counsel for Petitioner filed a response to the motion, asserting that the court should strike the motion as it was received by counsel less than seven days before trial. *Id*. at 31. Counsel for Petitioner further asserted that such joinder would be prejudicial

to Petitioner because the only connection between the incidents is that they involved three people who wore certain outfits, outfits that everyone in that particular neighborhood wore. *Id.* Petitioner stated that trying all of the cases together would give the impression that the same group of people being tried for the offenses committed all of the offenses. *Id.*

On September 24, 2010, the trial court filed a journal entry in Case 533087 indicating that it had advised Petitioner with counsel present of his constitutional rights and the penalties that he was facing. ECF Dkt. #7-1 at 33. The entry indicated that Petitioner retracted his former not guilty pleas in this case and entered guilty pleas to the three counts of aggravated robbery with the three-year firearm specifications. *Id.* at 33. The court indicated that the one-year firearm specifications were deleted at the prosecutor's request and counts 4, 5, 6, 8, 9, and 10 were nolled[1]. *Id.* The trial court imposed a prison sentence of 10 years, with the three, three-year firearm specifications to run prior to and consecutive with 7 years of incarceration on the underlying aggravated robbery counts with the firearm specifications to merge and the three counts to run concurrently with one another but consecutively to the sentences in Petitioner's other cases. *Id.* The trial court also imposed a mandatory term of 5 years of post-release control. *Id.*

On September 24, 2010, the trial court issued a journal entry in Petitioner's Case 537809 indicating that it had advised Petitioner with counsel present of his constitutional rights and the penalties that he was facing. ECF Dkt. #7-1 at 34. The entry indicated that Petitioner retracted his former not guilty pleas in this case and entered guilty pleas to the three counts of aggravated robbery with the three-year firearm specifications. *Id.* The court indicated that the one-year firearm specifications were deleted at the prosecutor's request and counts 4, 5, 6, 7, 8, 9, 10, 11 and 12 were nolled. *Id.* The trial court imposed a prison sentence of 11 years, with the three, three-year firearm specifications to run prior to and consecutive with 8 years of incarceration on the underlying aggravated robbery counts with the firearm specifications to merge and the three counts to run concurrently with one another but consecutively to the sentences in Petitioner's other cases. *Id.* The

---

[1] Count 7 is not mentioned as nolled in the journal entry but Respondent indicates in his Return of Writ that "the remaining counts of the indictment" were nolled. ECF Dkt. #7 at 5.

trial court also imposed a mandatory term of 5 years of post-release control. *Id.*

Finally, on September 24, 2010, the trial court issued a journal entry in Petitioner's Case 537810 indicating that it had advised Petitioner with counsel present of his constitutional rights and the penalties that he was facing. ECF Dkt. #7-1 at 36. The entry indicated that Petitioner retracted his former not guilty pleas in this case and entered guilty pleas to the two counts of aggravated burglary with the three-year firearm specifications. *Id.* The court indicated that the one-year firearm specifications were deleted at the prosecutor's request and counts 3, 4, 5, 6, 7, 8, and 9 were nolled. *Id.* The trial court imposed a prison sentence of 10 years, with the two, three-year firearm specifications to run prior to and consecutive with 7 years of incarceration on the underlying aggravated burglary counts with the firearm specifications to merge and the two counts to run concurrently with one another but consecutively to the sentences in Petitioner's other cases. *Id.* The trial court also imposed a mandatory term of 5 years of post-release control. *Id.*

### B.   <u>Direct Appeal</u>

On October 21, 2010, counsel for both Petitioner and Marlon Hudson filed a timely notice of appeal for Case 537809[2] to the Ohio Court of Appeals for the Eighth District. ECF Dkt. #7-1 at 37. In the appellate brief filed by counsel, Petitioner asserted the following assignments of error:

> I.   THE TRIAL COURT DID NOT COMPLY WITH CRIM. R. 11 AND DEFENDANT'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.
>
> II.  THE TRIAL COURT ERRED IN NOT PERMITTING THE APPELLANT TO OBTAIN COUNSEL OF HIS CHOICE OR THE RAMIFICATIONS OF JOINT REPRESENTATION.
>
> III. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

ECF Dkt. #7-1 at 58-74. The State filed an appellee brief. *Id.* at 75-97.

On April 20, 2011, Petitioner, through counsel, filed a motion for leave to supplement his appellate brief to add the following assignment of error:

_____

[2] Case 537809-A was that of Petitioner and Case 537809(B) was that of Marlon. ECF Dkt. #7-1 at 38-41.

IV.     THE TRIAL COURT ERRED IN IMPOSING A TERM OF
        INCARCERATION THAT IS NOT PROPORTIONATE TO SIMILARLY
        SITUATED OFFENDERS.

ECF Dkt. #7-1 at 101-107.  The appellate court granted Petitioner leave to supplement and the State

filed an appellate brief addressing this assignment of error.  *Id*. at 108-116.

On January 12, 2012, the Eighth District Court of Appeals issued an opinion affirming the

trial court's judgment.  ECF Dkt. #7-1 at 117-132.

**C**.     **Supreme Court of Ohio**

On February 24, 2012, Petitioner, through counsel, filed a notice of appeal in the Supreme

Court of Ohio.  ECF Dkt. #7-1 at 133.  On the same date, Petitioner, through counsel, filed a

memorandum in support of jurisdiction asserting the following:

PROPOSITIONS OF LAW

I.      After having an attorney leave the courtroom, a trial court must conduct a
        substantive discussion with the Defendant concerning one's right to be
        represented by counsel and the choice and ramifications of dual
        representation with co-Defendant's counsel.

II.     When a defendant informs the Court he was promised by his counsel a
        certain sentence which induced him to plea and then, after explanation by the
        trial court, enters a plea of not guilty, the trial court must conduct a thorough
        discussion with Defendant to ensure his/her subsequent plea is intelligent,
        knowingly and voluntarily made.

III.    Failure to talk to one's client, to lead him to believe there was an agreed upon
        sentence when there was not, and to fail to adequate prepare him/her for the
        court proceedings constitutes ineffective assistance of counsel.

IV.     An appellate court is not relieved of conducting a disproportionate review
        analysis simply due to the fact that the co-defendant's sentence of four years
        occurred after the other co-defendant was sentenced to thirty one years
        incarceration.

*Id*. at 153.

On May 23, 2012, the Supreme Court of Ohio dismissed the appeal as not involving

any substantial constitutional question.  ECF Dkt. #7-1 at 187.

**III.**    **28 U.S.C. § 2254 PETITION**

On April 3, 2013, Petitioner pro se executed the instant petition for a writ of federal habeas

corpus, which was filed on April 11, 2013.  ECF Dkt. #1.  Petitioner raises the following grounds

-6-

for relief:

GROUND ONE:

THE TRIAL COURT DID NOT COMPLY WITH CRIM. R. 11 AND PETITIONER'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.

Supporting Facts:

Failure to talk to one's client, to lead him to believe there was an agreed upon sentence when there was not, and to fail to adequately prepare him/her for the court proceedings constitutes ineffective assistance of counsel. When a defendant informs the Court he was promised by his counsel a certain sentence which induced him to plea and then, after explanation by the trial court, enters a plea of not guilty, the trial court must conduct a thorough discussion with Defendant to ensure his/her subsequent plea is intelligent, knowingly and voluntarily made. The Defendants were led to believe that their sentence would be a maximum of 12 years.

GROUND TWO:

THE TRIAL COURT VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS IN NOT PERMITTING THE PETITIONER TO OBTAIN COUNSEL OF HIS CHOICE OR THE RAMIFICATIONS OF JOINT REPRESENTATION.

Supporting Facts:

After having an attorney leave the courtroom, a trial court must conduct a substantive discussion with the Defendant concerning one's right to be represented by counsel and the choice and ramifications of dual representation with co-Defendant's counsel.

GROUND THREE:

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

Supporting Facts:

It is clear that defense counsel, who represented both Defendants who are brothers, did not adequately represent either of the Defendants. The discussion between defense counsel and the Court regarding which lawyer represented which client was disturbing. These Defendants were going to trial for what could result in sentences equal to the remainder of their lives and neither attorney had any meaningful discussions with one of their clients. At one point, the trial court asked why they didn't return the Defendant's money and opined on the record that Defendants should obtain other counsel. The Attorneys quickly talked the Defendants out of this and coerced them to plead guilty.

GROUND FOUR:

THE PETITIONER RECEIVED A DISPROPORTIONATE SENTENCE THAN HIS CO-DEFENDANT

Supporting Facts:

An appellate court is not relieved of conducting a disproportionate review analysis simple due to the fact that the co-defendant's sentence of four years occurred after the other co-defendants were sentenced to thirty four years incarceration.

*Id*. at 5-13.  On November 26, 2013, Respondent filed a return of writ.  ECF Dkt. #7.  On February 19, 2014, Petitioner filed a traverse.  ECF Dkt. #9.

## IV.   PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.   Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts."  *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Further, the petitioner must have given the highest court in the state in which he was

-8-

convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id*. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of

procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of

-10-

jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id*.

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

-12-

unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state

> court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.  ANALYSIS

### A.  First Ground for Relief-Guilty Plea and Ohio R. Crim. P. 11

In his first ground for relief, Petitioner asserts that the trial court did not comply with Ohio Criminal Rule of Procedure 11 and his plea was not knowingly, intelligently and voluntarily made because the trial court failed to thoroughly discuss with him the consequences of his plea after he told

-14-

the court that his counsel promised him a twelve-year sentence.  *Id.*

The undersigned recommends that the Court find a state court's failure to follow its own rules is not cognizable unless those failures constitute a violation of due process. *Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir. 2011), citing *Ramos v. Rogers*, 170 F.3d 560, 564 n. 2 (6th Cir.1999)("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process." (citing *Norris v. Schotten,* 146 F.3d 314, 328 (6th Cir.1998))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) ("Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." (internal quotation marks omitted)).  Thus, a review of the Rule 11 plea colloquy is necessary to determine whether due process requirements were met.

In order "[f]or a plea to be knowing and voluntary, a defendant must be aware of the consequences of his plea, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Marks v. Davis*, 504 Fed. App'x 383, 385, No. 10-2216 (6th Cir. Nov. 2, 2012), unpublished, citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quotation omitted).  The Supreme Court of the United States has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady*, 397 U.S. at 748. A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004, quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).  A plea may be involuntary if the defendant does not understand the nature of the constitutional protections that he is waiving and may be unintelligent if the defendant does not understand the charge against him. *Henderson v. Morgan*, 426 U.S. 637, 645, n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).  The government can show that the plea was made intelligently and voluntarily by producing a transcript of the state court proceedings. *McAdoo*, 365 F.3d at 494, citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).

Here, Respondent attaches a transcript of Petitioner's plea hearing which was also the plea hearing for Marlon. ECF Dkt. #7-2. The assistant prosecutor began the hearing by reciting the three cases against Petitioner and Marlon and the charges to which both men agreed to plead guilty. ECF Dkt. #7-2 at 1-3. Attorney Schurowliew, an attorney working for Attorney Josselson, who was retained by the mother of Petitioner and Marlon to represent them both, informed the court that he had difficulty communicating with Marlon. *Id*. at 2. He questioned Marlon's competency and indicated that he had been communicating with Petitioner the most. *Id*. at 4. A discussion ensued between Attorney Schurowliew and the court concerning his ability to represent Marlon. *Id*. Attorney Schurowliew stated that he thought that he was representing Petitioner but he was able to represent both men because they were being tried jointly and had both retained Attorney Josselson, his employer. *Id*. at 4-6.

Attorney Josselson informed the court that he was in fact retained by both Petitioner and Marlon and he and Attorney Schurowliew had both spoken to Marlon and Petitioner. ECF Dkt. #7-2 at 10-12. Attorney Josselson represented that both Petitioner and Marlon wanted to enter guilty pleas. *Id*. at 12. The court then inquired of Petitioner and Marlon about their willingness to plead guilty. *Id.* The court noted on the record that Marlon had an outburst and additional sheriff's deputies were needed, but he then quieted down and was able to proceed. *Id.* The court then conducted an inquiry of Marlon concerning his counsel's ability to represent him and Marlon ultimately stated that he wished to continue with his counsel. *Id*. at 14.

The assistant prosecutor then reiterated the charges to which Petitioner and Marlon were pleading guilty and recited the charges that the State would be dismissing, and he placed on the record the sentences that the defendants were facing. ECF Dkt. #7-2 at 14-18. The assistant prosecutor concluded that as part of plea negotiations, he told defense counsel that the State would not take a position at sentencing. *Id.* at 18.

Attorney Josselson informed the court that he had discussed the cases with Petitioner and Marlon and reviewed their constitutional rights with them. ECF Dkt. #7-2 at 18. The court thereafter inquired of both Petitioner and Marlon separately, informing them that they had to

-16-

separately state their answers:

| | |
|---|---|
| THE COURT: | Do you wish to take this plea agreement? |
| DEMARIO HUDSON: | Yes, your Honor. |
| MARLON HUDSON: | Yes. |

*Id.* at 19.  The court inquired of their ages and educational backgrounds, and each stated that they were in college and were able to read and write and understand the proceedings.  *Id.*  The court asked if either were under the influence of drugs or alcohol and both responded that they were not.  *Id*. at 19-20.  Both also responded that they were satisfied with the representation of counsel.  *Id.*

The trial court then reviewed each constitutional right that Petitioner and Marlon were waiving as a result of entering guilty pleas and each indicated that they understood those rights and the waiver thereof.  ECF Dkt. #7-2 at 20-21.  The court proceeded to review the possible sentences that Petitioner and Marlon were facing as to each of the charges to which they were entering their guilty pleas.  *Id*. at 20-24.  They responded that they understood.  *Id.*

The trial court then asked if anyone had made promises or threats in order to induce them to plead guilty other than that which was placed on the record.  ECF Dkt. #7-2 at 24-25.  Petitioner responded no, but Marlon stated, "[t]hey said it would be 12 years."  *Id*. at 25.  The following discussion was then had on the record:

| | |
|---|---|
| THE COURT: | Somebody told that to you? |
| DEMARIO HUDSON: | Told me about no more than 12 years. |
| THE COURT: | Oh, no.  I don't know who - - - I don't know who could have told you that, but that's not true. |
| DEMARIO HUDSON: | That's the only reason why I copped to it. |
| THE COURT: | That's not true. |
| DEMARIO HUDSON: | Why? |

-17-

| THE COURT: | Your underlying sentence is 9 years, and 3 years would be the minimum sentence, and the Court does not discuss sentence with anybody.  I don't ever tell anybody what I'm going to do. |
| | So I'm not making any promises with reference to your sentence, and nobody else can make any promises for the Court.  And I can tell you I never told your lawyers that.  I never told the prosecutor's office that. |
| | I did not discuss sentencing with anybody. I don't make promises on sentencing. |
| DEMARIO HUDSON: | I understand. |
| THE COURT: | There's not been any promises made to anybody? |
| DEMARIO HUDSON: | Right. |
| THE COURT: | I never discuss sentencing with anybody. Nobody.  So I have not told the county prosecutor, and I never discuss sentence with anybody. |
| | And you have no promise of 12 years from this Court.  That's not true.  You understand? |
| DEMARIO HUDSON: | Yes, ma'am. |
| THE COURT: | I want you to understand, young man, because you're the person that said it.  I never discuss sentencing with lawyers.  I never discuss sentencing with the prosecutors. |
| | I'm going to have them attest to that on the record today, because I never do that.  I never tell people what I'm going to do in sentencing. |
| | Do you understand that? |
| DEMARIO HUDSON: | Yes. |
| THE COURT: | Mr. Prosecutor, did I discuss sentencing with you? |

-18-

MR. BOTNICK:          No.  I would also place on the record that in practicing in front of you for three years I have never once had any conversations with you pertaining to sentencing, because it's this Court's position not to get involved or discuss possible sentences to be imposed.

THE COURT:          Mr. Josselson?

MR. JOSSELSON:          I never had any conversation about sentencing.

THE COURT:          Okay.  So you know there is no promise?

DEMARIO HUDSON:          Yes.

MARLON HUDSON:          Yes.

MR. JOSSELSON:          Let me try to explain it a little bit.  The prosecutor indicated that he would not argue against a minimum sentence which was 12 years.

THE COURT:          That's fine.

MR. JOSSELSON:          That's where the confusion was.

THE COURT:          But that's not a promise.

MR. JOSSELSON:          Right.  It's not a promise.

THE COURT:          I never told the prosecutor that he could reduce these cases to three felonies of the first degree.  I don't get into that.  Whatever he does on behalf of the citizens for the State, that's within his parameters.

So he has the right to speak on behalf of the people, but he can not promise anybody I'm going to give 12 years.  I have not told anybody, nor will I ever tell anybody that.  I don't make promises on sentence.  I have to wait to see, because I don't know.

MR. JOSSELSON:          Understood.

*Id*. at 25-29.   The trial court then asked Petitioner and Marlon:

| | |
|---|---|
| THE COURT: | How do you plead, guilty or not guilty? |
| DEMARIO HUDSON: | Not guilty. |
| THE COURT: | And are you, in fact, guilty? |
| DEMARIO HUDSON: | No. |
| THE COURT: | How do you plead? |
| MARLON HUDSON: | Not guilty. |
| THE COURT: | And are you, in fact, guilty? |
| MARLON HUDSON: | No. |

*Id*. at 29.  Upon receiving statements that they were not guilty, the trial court stated:

| | |
|---|---|
| THE COURT: | All right.  Let's proceed to trial.  If you're not guilty we'll proceed to trial and the jury will find you not guilty. |

*Id.*  Then Petitioner and Marlon both stated:

| | |
|---|---|
| DEMARIO HUDSON: | I'm guilty. |
| MARLON HUDSON: | I'm guilty. |

*Id.*  The court then asked again:

| | |
|---|---|
| THE COURT: | How do you plead, guilty or not guilty? |
| DEMARIO HUDSON: | Guilty. |
| THE COURT: | And are you, in fact, guilty? |
| DEMARIO HUDSON: | Yes. |

-20-

THE COURT:  How do you plead, Marlon, guilty or not guilty?

MARLON HUDSON:  Guilty.

THE COURT:  And are you, in fact, guilty?

MARLON HUDSON:  Yes.

THE COURT:  Let the record reflect that the defendants have knowingly, and voluntarily entered their pleas with a full understanding of their constitutional and trial rights.

Counselors, are you satisfied Rule 11 has been complied with?

MR. BOTNICK:  Yes.

MR. JOSSELSON:  Yes, ma'am.

THE COURT:  Therefore, the Court will accept your pleas of guilt.

*Id.* at 30-31.

The undersigned recommends that the Court find that no due process violations occurred during the plea colloquy.  The trial court reviewed the constitutional rights that Petitioner was waiving upon a plea of guilty, Petitioner stated that he was satisfied with counsel's representation, and the trial court thoroughly informed Petitioner that contrary to what he thought, a 12-year sentence was not guaranteed. Petitioner's counsel explained that Petitioner must have been confused over the conversation that they had regarding a minimum 12-year sentence.  Petitioner at no time sought to inform the court or his counsel that his counsel's statement regarding the confusion about sentencing was erroneous.  Rather, after the trial court thoroughly informed Petitioner that no promises were made about sentencing, Petitioner ultimately entered a guilty plea.  While Petitioner initially told the trial court that he was entering a not guilty plea after she explained that no promises were made about sentencing, he thereafter changed his mind and entered a guilty plea.  Accordingly,

-21-

the undersigned recommends that the Court find that Petitioner's plea was knowingly, willingly and voluntarily made.

Petitioner also asserts in his first ground for relief that his counsel was ineffective because counsel lead him to believe that there was an agreement that he would be sentenced to twelve years in prison when there was not and counsel failed to adequately prepare him for the court proceedings. ECF Dkt. #1 at 5. The undersigned will address these issues in connection with Petitioner's third ground for relief that also alleges the ineffectiveness of counsel.

### B.   Second Ground for Relief - Trial Court Error Concerning Joint Representation

In his second ground for relief, Petitioner asserts that the trial court violated his federal due process rights by not allowing him to obtain counsel of his choosing and by not explaining the ramifications of joint representation to him. ECF Dkt. #1 at 4. Petitioner contends that after the trial court made one of the two attorneys representing Petitioner and Marlon leave the courtroom, the trial court was required to conduct a substantive discussion on the record concerning Petitioner's right to be represented by counsel and the ramifications of dual representation with Marlon's counsel. *Id*. Petitioner notes that even at sentencing, which immediately followed the plea hearing, he told the court that he did not commit the crime but he had no way to prove that he did not do so. ECF Dkt. #9 at 14, citing ECF Dkt. #7-2 at 35-36.

The Ohio appellate court addressed this issue in its opinion in conjunction with Petitioner's assertion that his plea was not valid:

> Two attorneys, Stanley Josselson and Valentine Schurowliew, were present at the plea hearing for the defense. In both the first and second assigned errors, Demario contends that it was not clear which attorney represented him and which represented Marlon. Demario further contends that having one attorney for two codefendants "raises serious [Bruton][footnote omitted] issues and has a direct effect on the Defendant's right to have independent counsel and the rights/abilities of each defense counsel in that regard.
>
> The record before us indicates that as the parties were in the process of jury selection, the defendants indicated that they wished to accept the plea offered by the state. As the assistant prosecuting attorney attempted to place the specifics of the state's offer on the record, Marlon had an "outburst." Attorney Schurowliew informed the court that he had particular "difficulty communicating" with Marlon, so he generally dealt with Demario. Schurowliew indicated that he worked for attorney Josselman, and

together they represented both defendants.  Josselson confirmed that Schurowliew
worked for him and that together they represented both defendants.  Josselson also
stated that both he and Schurowliew had had communications with both Demario and
Marlon.  Both attorneys indicated that they had prepared their case and were able to
proceed.

The court and Marlon then engaged in the following exchange:

> "THE COURT: * * * Now, we're at the juncture at trial where the county
> prosecutor has made an offer.  It's my understanding through Mr. Josselson
> that such an offer has been accepted by you, but if you feel that Mr. Josselson
> cannot continue in your representation, I need you to tell me now.

> "MARLON HUDSON: Whatever, man.  He said he could go ahead.

> "THE COURT: No.  You tell me if he can, not what he said.  I need to know
> from you if you feel that he can adequately represent you, and if you think
> that he can't, I need you to tell me that, too.

> "MARLON HUDSON: He said he can.

> "THE COURT: Do you feel that he can represent you, yes or no?

> "MARLON HUDSON: Yeah.

> "THE COURT: Yes?

> "MARLON HUDSON: Yeah, man.

> "THE COURT: Is it your desire to continue with Mr. Josselson as your
>  lawyer?

> "MARLON HUDSON: It don't matter.

> "THE COURT: It does matter to the Court, and I need to know from you if
> it is your desire for Mr. Josselson to represent you?

> "MARLON HUDSON: Yes.  My mama paid for him.

> "THE COURT: Is it your desire to continue with him?

-23-

 

       "MARLON HUDSON: Yes."

> This appeal was taken by Demario, not Marlon. [footnote omitted].  Demario even acknowledges in his brief that "[t]his appeal concerns Demario Hudson only * * * ." [footnote omitted].  Demario did not raise the issue of representation at the trial court level.  When asked by the trial court if he was satisfied with the representation that he had received, Demario responded, "[y]es, your honor."  In fact, Marlon also responded, "[y]es."  Demario cannot now attempt to "backdoor" Marlon's issue as his own.  Accordingly, Demario's contention about his representation at the plea hearing raised in the first assignment of error is overruled and the second assignment of error is overruled in toto.

ECF Dkt. #7-1 at 123-126.

In *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the United States Supreme Court held that state trial courts are required to investigate objections to joint representation.  However, the Court limited this duty to investigate in *Cuyler v. Sullivan* when it stated that "nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. " 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).  The Court noted that defense counsel has an ethical obligation to avoid representation that presents a conflict of interest and to inform the court when a conflict of interest arises.  *Id*.  Accordingly, since defense counsel is in the best position to determine when a conflict of interest exists or may develop, the Court held that "[a]bsent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. " *Id*.  The Court went on to hold that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.*

Here, as pointed out by the Ohio appellate court, Petitioner never objected to the representation and Attorneys Schurowliew and Josselson never raised an issue concerning a conflict or potential conflict of interest.  In fact, Attorney Schurowliew informed the trial court that he had great difficulty communicating with Marlon and he therefore "always communicated with" Petitioner. ECF Dkt. #7-2 at 4.  The trial court thereafter questioned Attorney Schurowliew about being able to proceed with trial without the ability to communicate with Marlon.  *Id*. at 4-5.  A

discussion was had about Marlon's competency and Attorney Schurowliew stated that he presumed that he was representing Petitioner and not Marlon. *Id.* at 5. While Petitioner asserts that the trial court removed one of the attorneys from the courtroom, the record of proceedings does not reflect this.

The record does show that the court then inquired of Marlon and, as quoted above by the Ohio appellate court, ultimately stated that it was his desire that Attorney Josselson continue to represent him because his mother retained Attorney Josselson for him. ECF Dkt. #7-2 at 13-14. The assistant prosecuting attorney thereafter repeated the charges to which Petitioner and Marlon were pleading guilty, the charges that he wanted to dismiss, and the potential sentences that they were facing upon pleading guilty. *Id.* at 16-18. The trial court then asked if Attorney Josselson was speaking on behalf of both Petitioner and Marlon and he answered affirmatively. *Id.* at 18. The court conducted separate inquiries of Petitioner and Marlon, which included a question as to whether they were satisfied with the representation that they had received from their lawyer. *Id.* at 18-20. Each responded that they were satisfied. *Id.* at 20.

At no time during this dialogue did Petitioner object to joint representation and at no time did Attorneys Schurowliew or Josselson raise a conflict or even a potential conflict arising from said representation. The Ohio appellate court found that Petitioner did not raise the issue of joint representation or conflict of interest with the trial court and it was Marlon alone who raised the issue. ECF Dkt. #7-1 at 125-126. That court found that Petitioner therefore could not present Marlon's issues concerning joint representation as his own on appeal without first raising his own issue with the trial court. *Id.*

Based upon the Ohio appellate court's decision and a review of the trial court transcript, the undersigned recommends that the Court find that the Ohio appellate court's determination on joint representation was not contrary to or an unreasonable application of clearly established Federal law and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-25-

**C.**     **First and Third Grounds for Relief-Ineffective Assistance of Counsel**

In part of his first  ground for relief, Petitioner alleges that his counsel was ineffective by failing to talk to him, failing to adequately prepare him for court proceedings, and for leading him to believe that he would receive a maximum prison sentence of twelve years. ECF Dkt. #1 at 6.  In his third ground for relief, Petitioner appears to assert on his own behalf and on behalf of Marlon that their counsel were ineffective because they did not adequately represent them and did not meaningfully discuss their cases with them.  *Id*. at 9.  Petitioner points to the transcript of the plea hearing as support and alleges that the "discussion between defense counsel and the Court regarding which lawyer represented which client was disturbing."  *Id*.  He also cites to the plea hearing transcript where the trial court asked one of their attorneys why he did not return the money that Petitioner and Marlon's mother paid him and Petitioner alleges that the court "opined on the record that Defendants should obtain other counsel."  *Id*.  Petitioner thereafter asserts that "[t]he Attorneys taked the Defendants out of this and coerced them to plead guilty."  *Id.*

In order to establish the ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that such performance prejudiced the defense, i.e., that counsel's errors were so serious as to deprive petitioner of a fair trial.  *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Judicial scrutiny of a counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689.

Because of the difficulties in assessing counsel's performance, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, supra.  This is a high burden to meet:

-26-

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (citation and internal quotation marks omitted).

"The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S.Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009). Pursuant to §2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S.Ct. at 788.

In finding no merit to Petitioner's ineffective assistance of counsel claims, the Ohio appellate reviewed the standard under *Strickland* for proving an ineffective assistance of counsel claim and reasoned that:

> representation was not Demario's issue; it was Marlon's, and he is not a party to this appeal. There was no "promise" of any sentence and any confusion regarding the sentence was adequately addressed. And, when Demario stated that he was not guilty, the trial court ended the plea hearing and said that the matter would proceed to trial; Demario, on his own accord, stated that he was guilty and desired to enter such a plea. The court questioned him again, and he again indicated that it was his

-27-

desire to plead guilty.

ECF Dkt. #7-1 at 129-130.

The undersigned recommends that the Court find that the Ohio appellate court's determination is not contrary to federal law or an unreasonable determination of the facts in light of the evidence presented.  The record of the plea hearing confirms that the trial court's discussion concerning the issue of counsel focused on the representation of Marlon and defense counsel even indicated that he always spoke with Petitioner because he had difficulty communicating with Marlon and he thought that he was representing Petitioner at the plea proceedings.  ECF Dkt. #7-2 at 4-11. Petitioner affirmed on the record that he was satisfied with counsel's representation and at no time did he assert that he was dissatisfied with counsel.  *Id*. at 4-31.  While Petitioner did initially state on the record that he was told that he would serve a sentence of no more than 12 years, the trial court explained in detail that no guarantee existed of such a sentence and that the decision of sentencing was up to her and she spoke to no one about sentencing.  *Id*. at 24-26.  Both the assistant prosecuting attorney and Petitioner's counsel affirmed that the trial court did not discuss sentencing with them and the trial court ensured that Petitioner knew that no promise was made about his sentence.  *Id*. at 27.  Attorney Josselson then informed the court that confusion may have been caused when he had discussions with Petitioner and  told him that the assistant prosecuting attorney represented that he would not argue against a minimum sentence which was twelve years.  *Id.* at 28.

After this explanation, Petitioner and Marlon then told the trial court that they were pleading not guilty to the charges.  ECF Dkt. #7-2 at 29.  The trial court informed them that they were then going to proceed to trial.  *Id.*  Petitioner and Marlon immediately thereafter informed the court that they were guilty of the crimes for which they were charged.  *Id*. at 30.  The trial court asked Petitioner and Marlon how they plead to the charges and both responded that they were in fact guilty. *Id*.  The trial court accepted the pleas as knowingly, voluntarily, and willingly made.

Based upon the plea hearing, the undersigned recommends that the Court find no merit to Petitioner's ineffective assistance of counsel claims since Petitioner did not raise the issues at the

-28-

plea hearing and any issues regarding the promise of a sentence of twelve years were discussed and dispelled on the record at the plea hearing before he entered his guilty pleas.  If Petitioner is asserting the ineffective assistance of counsel on the basis of a conflict in representation or on the basis that his counsel had an off-the-record discussion with him concerning a promise of a twelve-year sentence, he should have and could have filed a post-conviction petition under Ohio Revised Code § 2953.21 in order to present evidence outside the record as to such matters.  Petitioner did not do so and cannot do so now because the time in which to file such a petition has passed.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's first and third grounds for relief asserting the ineffective assistance of trial counsel.

### D.  Ground for Relief Number Four - Disproportionate Sentence

Petitioner asserts in this ground for relief that the Ohio appellate court was not relieved of its duty to conduct a disproportionate review analysis merely because Montana Hudson's 4-year sentence occurred after he was sentenced to 31 years in prison.  ECF Dkt. #1 at 10.  The Eighth District analyzed Petitioner's disproportionate sentence argument as follows:

> In his final assignment of error, Demario contends that his 31-year sentence is disproportionate to the four-year sentence Montana received for his involvement.
>
> This court has held that in order to support a contention that a sentence is disproportionate to sentences imposed upon other offenders, the defendant must raise the issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal.  *State v. Cooper*, 8th Dist. No. 93308, 2010-Ohio-1983, ¶ 24; *State v. Lang*, 8th Dist. No. 92099, 2010-Ohio-433, ¶ 21; *State v. Edwards*, 8th Dist. No. 89181, 2007-Ohio-6-68, ¶ 11.  Demario did not raise the issue of proportionality in the trial court and, therefore, he has not preserved this issue for appeal.
>
> We further note that Demario pleaded guilty to eight first-degree felonies with three three-year firearm specifications, while Montana pleaded guilty to three felonies with no firearm specifications.  The two, therefore, were not similarly situated.
>
> In light of the above, the fourth assignment of error is overruled.

ECF Dkt. #7-1 at 131.

-29-

The undersigned first points out that the Ohio appellate court noted that Petitioner and Montana were not similarly situated for sentencing purposes as Montana plead guilty to three felonies with no firearm specifications while Petitioner plead guilty to eight first-degree felonies with three, three-year firearm specifications.  This would certainly result in different sentences.

Nevertheless, even if they were similarly situated, the United States Constitution does not require a proportionality review.  *Pulley v. Harris,* 465 U.S. 37, 50-51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1981); *Buell v. Mitchell*, 274 F.3d 337, 368 (6th Cir. 2001).  Thus, the only question here is whether Petitioner's sentence violates the Eighth Amendment.  The United States Supreme Court has held that the Eighth Amendment does not require strict proportionality between a crime and the sentence. *United States v. Marks,* 209 F.3d 577, 583 (6th Cir.2000) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-960, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).  A sentence that is within the statutory maximum sentence is generally not considered cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).  The Supreme Court has held that only those "extreme sentences that are grossly disproportionate to the crime are prohibited" by the Eighth Amendment's ban on cruel and unusual punishment. *United States v. Flowal*, 163 F.3d 956, 963-64 (6th Cir.1998) quoting *Harmelin v. Michigan*, 501 U.S. 957, 995-97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

As the Ohio appellate court noted, Petitioner entered guilty pleas to eight first-degree felonies and three, three-year firearm specifications.  The trial court and the assistant prosecuting attorney explained at the plea hearing that the maximum sentence for each first degree felony at that time was a range of 3 to 10 years in prison and Petitioner was facing a mandatory consecutive three-year firearm specification in each of the three cases.  ECF Dkt. #7-2 at 15-17.  Accordingly, the trial court explained that Petitioner was facing a nine-year sentence for the firearm specifications alone before serving any sentence on the underlying felonies, for which he faced a maximum 10-year sentence on each of the eight felonies to which he was entering guilty pleas. *Id.*

Based upon the maximum sentence that Petitioner was facing and the fact that his sentence was well within the range allowed by Ohio statute at the time, the undersigned recommends that the Court find that Petitioner's sentence is not contrary to or an unreasonable application of clearly

established federal law as determined by the United States Supreme Court because has not been subjected to cruel and unusual punishment as his total sentence was not "grossly disproportionate" to the crimes he committed.  Therefore, the undersigned recommends that the Court find that Ground Four has no merit.

## VII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE:   October 29, 2014                              _/s/ George J. Limbert_____

                                                      GEORGE J. LIMBERT
                                                      UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).